21-2275 Minnesota United States v. Johntez Randle Thank you. Mr. Wright. Good morning. May it please the court. My name is Stephen Wright. I represent the appellant Johntez Randle in this matter. And we're here to ask the court to reverse and to remand to the district court on two bases. First of all, we have a search warrant for a residence which lacked probable cause, latched nexus to establish probable cause to believe the contraband would be found in the residence. And that is supported by both the magistrate judge and the district court findings. And we would ask that the holding that good faith saved the search warrant is not justified and that this court should exercise de novo review and determine that the search warrant cannot be saved by good faith. When we look at this circuit's precedence, what is remarkable is that the search warrant affidavit here is thinner than any that can be found in the precedence. We have one CLI who makes vague statements about Mr. Randle. There is one controlled by- Counsel, let me ask you something that kind of puzzles me. I assume that the warrant was valid insofar as it authorized a search of Mr. Randle's person and the Audi vehicle. Do you disagree with that? We do not disagree with that. So we're talking about this thinnest warrant ever was at least plenty thick enough for two-thirds of the places it authorized to be searched. Do the cases make clear that the nexus requirement applies to each separate place or person so that a warrant can indeed be one-third invalid? Well, what we are arguing about is specifically the warrant for this Veracruz residence. As to whether there is probable cause to arrest and search Mr. Randle, that is a different question. Well, let's take the Audi. The Audi's sitting in the driveway or outside the house, right? It was, yes. Yes, and the warrant authorized, validly authorized the search of the Audi. Yes. Okay, so does the case law make clear that we go property by property on the nexus question? I suspect it does, but I'm not familiar with that. Well, the general question is whether or not, and I believe this goes back to the Supreme Court in Zurcher where they say that the question is not whether there's probable cause related to a person, but probable cause related to a specific place to be searched. And when we're talking about what is claimed to be a residence, then obviously we're talking about the most strict requirements of probable cause before law enforcement can come in and enter. And so even if there is probable cause to arrest and search Mr. Randle, even if there is probable cause to search this car, if they should find it, the question before the court today is whether there was probable cause established to believe that there would be contraband found within the Veracruz residence. And when it comes to residence, this court has generally required three things, all of which we're lacking here. This court has recognized that a continuous course of drug trafficking can establish probable cause to search someone's residence. A statement that in the law enforcement officer's training and experience that drug proceeds, contraband, etc. will be found in a residence will help to establish probable cause in combination with a continuous course. And most relevant here is the question of when a direct line is drawn between a specific sale and a residence, when one is followed directly either to or from a controlled buy. And as both the district court and the magistrate judge found, this affidavit does not create that direct line. In fact, what the district court said is that there is a complete absence of any evidence that they followed him from this alleged buy. I thought it had the Audi going to the residence. What both the magistrate and the district court found is that if you look at the language of the affidavit, this is not hyper-technical reading. This is exactly what the affidavit says. It says that there is a controlled buy and the Affian officer, Officer Hamilton, after the buy meets with his CRI He goes through an identification. He receives the crack cocaine that was allegedly sold to him. And then in a separate paragraph later on, what the officer says is that your Affian and assisting officers followed Randall as he drove from the city of Minneapolis to his home located at Veracruz Lane, Brooklyn Park. I don't have the affidavit in front of me. Doesn't it say that the Audi drove the drugs to the controlled buy? It does say that Randall arrived inside a silver Audi, yes. And then the Audi goes back to this residence. That, your honor, is not in the affidavit. It just says that they followed Randall at some unspecified time later in the day to his home located at Veracruz Lane in Brooklyn Park. It doesn't say they followed the Audi. No, it doesn't say they followed the Audi. It doesn't say that they followed him immediately from the sale. It does not say when or where they started following him. It is, again, to quote the district court, a complete absence of any information suggesting a direct line from the sale to the residence. And so we have the good faith question. And ordinarily we would go straight off of the affidavit, but here we have testimony from the officer that he knew that there was another address listed, and this kind of dovetails with our second issue, which is about whether a Franks hearing should have been held. He knew that there was another address for Mr. Randall that was registered with the state of Minnesota on his limited driver's license and his DMV records. He references seeing those records in his affidavit but does not tell the signing magistrate that there is this other address. And this is significant because in his testimony, Officer Hamilton testified that when, in his experience, when drug traffickers have multiple addresses, they have different purposes for those addresses. This is your omission argument for a Franks hearing, right? Well, it dovetails because ordinarily on the pure question of... But let's go there because with respect to that, at least three times in your brief, you misstate the governing standard. You quote a case called Jacobs for the proposition, the kind of thing the judge would wish to know. But the Eighth Circuit standard on omissions is that they are material for Franks hearing purposes only when the material omitted would have been clearly critical to the finding of probable cause. And that test originated in a case prior to Jacobs. So Jacobs, to the extent that Jacobs said that, it's not controlling law. And so here, the other thing that your brief, and I want you to comment on this, your brief does not give much credence, if any, to the fact that the trial court said that when someone is on probation, probation office records with respect to residency are very significant, which seems to me obviously true. And so if you put those two together, why doesn't the probation office records mean that any other information that he might have been living somewhere else was not critical to the finding of probable cause? Well, Your Honor, I think there is a combination of multiple things that make this clearly critical to the finding of probable cause. First of all, while it's not insignificant, we are certainly not arguing that it is without any significance that his address was found on a probation portal. What is significant is that we have another address registered with the government, an address in the city of Minneapolis, which, according to the officer's own testimony, when there are multiple addresses, the different addresses exist for different purposes in his training and experience. And so when you tie that to the thin thread that connects this particular buy to this particular residence, all of a sudden it becomes very critical to the understanding of whether there's probable cause that this is the residence that is for, where we might believe that drug proceeds or drug contraband would be found. It is the combination of all of those things that makes the probation address not insignificant, but it needs to be balanced. And again, when we look at the affidavit and the thread, and I see that I'm at my rebuttal time, so I'll make this brief. When we see that the district court and the magistrate judge both found that there was no nexus established, it's difficult to see how it would not be material that he had another address. And so with that, I'll end my time. Thank you. Buzicki, did I say that right? Yes, Your Honor, Kate Buzicki, and I'm here on behalf of the government in this matter. Your Honor, this is a straightforward case in which the application of common sense tells us that this warrant is valid either under the rule of Leon or because probable cause existed. This court has found that the Leon exception applies where a warrant contains a technical omission, but that is not significant enough to completely vitiate the finding that a reasonable belief existed on behalf of the officer that contraband would be found at the place he searched, and that's exactly what happened here. Officer Hamilton knew from his CRI that Randall was selling crack cocaine around the city of Minneapolis. He had a controlled buy. The controlled buy indeed yielded crack cocaine, and then Officer Hamilton followed Randall back to his home on Veracruz Lane. The Veracruz Lane address is significant, as you said, Your Honor, because it was the address that Randall reported to his supervising probation officer that he would use where he would be found and where probation officers could expect to find him for supervision purposes. The district court was absolutely correct in observing that that would be more accurate and highly significant in determining where Randall's actual home is at the time of the crime. When Officer Hamilton followed Randall back, the warrant did not state that that happened immediately, but Officer Hamilton did testify that the course of events was immediate. So when you look at the Leon analysis, Officer Hamilton knew that the following occurred immediately, and therefore there was a strong link between the Veracruz Lane address and the crimes that were committed. At a minimum, Randall would be carrying the money from the buy. He could also be using the home to store drugs, paraphernalia, or other evidence significant to the crack cocaine investigation. Carpenter... Counsel, a quick question. I'm not familiar enough with the record. The warrant search was about 72 hours after the control buy. Yes, Your Honor. Okay. Does the record reflect whether the Audi was... Officers, when they went to execute it, the Audi was there and they knew that? Your Honor, the... And I'll just refer to both the warrant and to the testimony at the suppression hearing. The warrant states that the affiant, meaning Officer Hamilton, followed Randall as he drove to the Veracruz Lane. It does not say drove the Audi, so I want to make that clear. However, it is logical, based on the text and the context, to believe that Randall did not switch cars in this case at the time of the controlled buy. No, I was thinking for Leon purposes, if they knew the Audi was at the home and they had a valid warrant to search the Audi, it's hard to say that they didn't have good faith reliance at least to go to the location. I agree with that, Your Honor. And it was known that Randall used an Audi and that the Audi was significant to the investigation. So looking at the Fourth Amendment jurisprudence, which talks about fair probabilities and reasonable probabilities as opposed to certainties, the fact that Randall was using the Audi at that time and was known to use the Audi is significant and something that the officers could have used in determining that Veracruz Lane was a place they would want to search. Was it there? Was it there? When they executed the warrant, I mean, there's no suppression issue regarding what, if anything, was found in the Audi, but was it there? Your Honor, at the time of the search warrant execution, Randall was not home. He did later arrive, and if I recall correctly, he arrived in a different vehicle. Thank you. Counsel? Yes, Your Honor. Counsel, question. I'm guessing that looking back, you would prefer to have an affidavit that was a little more substantial than what we have here, but how would you characterize the affidavit? Are there false statements in the affidavit? Are there omissions? What are we dealing with? Yes, Your Honor. Your Honor, in this case, the affidavit contains truthful information except for one word in which the officer and the court below were perfectly clear that there was a misstatement, and that was the phrase arrests, plural, rather than arrest. So there was one inaccuracy in the warrant. With respect to the other information in the warrant, there was not any information that was untruthful, reckless, or a deliberate lie. The officer stated the facts of his investigation, and the facts of his investigation showed that Randall was living on Vera Cruz Lane because he had reported to his probation officer as his residence, and he, in fact, went to that address following the controlled by. Okay, so would you say there were omissions? Would you say one technically false statement, but were there omissions? If the court is referring to an omission about his other reported address on Stevens, Your Honor, as Judge Loken pointed out, the question is materiality. The fact that someone has other addresses in their history or in different databases has to be examined with the lens of materiality and relevance. In this case, it was extremely significant that Randall reported the Vera Cruz Lane address as his home to his supervising officer. As this court knows, that supervising officer is going to be contacting him, checking on him, possibly placing restrictions or location monitoring, so that address is highly relevant and extremely significant to the warrant. And it's common sense that people often have multiple addresses in different databases. For example, if somebody moves house, somebody enlists in the military, somebody goes to college, they may have one address where they're receiving mail and one address that's stated on their driver's license. We look at the facts that are significant, material, and relevant to the investigation. So with respect to the Stevens address versus Vera Cruz Lane, there was no misstatement, no omission, and no deliberate lie. Thank you. Your Honor, in this case, the court could also find that there's probable cause to support a search of the Vera Cruz Lane address. While there isn't a per se rule that a home can be searched in the course of a drug investigation, this court has frequently come very close to that framework. In this case, the home was extremely relevant and it was very logical for both the issuing state court judge and the officer to believe that the Vera Cruz Lane address would be significant to the investigation and would likely contain contraband. The district court found that that issue was a close call. The district court stated that there was a lot of evidence to support all of the facts of the drug investigation and the omission of language about the officer's training and experience relating to homes as significant location for ongoing drug dealing was a technical deviation from the standard as opposed to the kind of lack of factual support or reckless or deliberate lies that are typically in play in a Leon situation. As the district court found, this is a case where Leon clearly applied and Leon should and can save the warrant in this case. There was no need for a Franks hearing because there were no lies, omissions, or deliberate misstatements. And alternatively, this court could also find there was probable cause to search the Vera Cruz Lane address. Unless the court has any other questions, I will rest on the briefs. We ask that the court uphold the district court's finding in this case. Thank you, counsel. Mr. Wright, you have some time. Yes, there it is. Thank you, your honor. First, I want to address the testimony from Officer Hamilton that Mr. Rambo was immediately followed from the by to the house. That is actually contradicted by the affidavit because it is very difficult to read the affidavit and understand how he could both meet with the CRI, debrief the CRI, which he says he did personally, and also follow Mr. Randall directly from the drug sale. It may be that there would be other things that he could say to establish that, but the affidavit itself contradicts his testimony, which, again, raises the need for a Franks hearing. The government, in its brief and here today, has referred to the district court's language of this being a close call for probable cause, but this is an experienced district court judge who knows the standards, who knows the deference that we pay to search warrant affidavits and to a magistrate's decision to issue a warrant. When she says it's a close call, it's a close call for being completely unreasonable to believe that there was probable cause to believe that the contraband would be found in the house. Lastly, before my time runs out, I do want to raise another issue that was raised in the briefs involving the fact that the procedural way that this occurred at the district court also demonstrates the need for a full Franks hearing, which is that the government, unprompted, filed a declaration from the affiant officer seeking to reinforce, to acknowledge one error in the affidavit, but to claim that there were no other errors in the affidavit, which turned out to be untrue when it came to light about the other address in Minneapolis, which the officer recognized that he knew about and decided on his own that he would not tell the signing magistrate or put that in his affidavit. And so, because the government was given an opportunity to reinforce this warrant without the defendant having an opportunity for a full evidentiary hearing, we believe that is another reason why this should be remanded for a full Franks hearing. What Franks hearing precedent supports that argument? Your Honor, there is the Maxwell case that the government cited in its brief, which actually supports the idea that there should not be a partial Franks hearing. We had cited the McMurtry case from the Seventh Circuit, which was about a defendant being prohibited from giving its side of a Franks hearing, and in Maxwell, the issue was the government not being given its side. But how does this establish the materiality? How is this a substantial threshold showing? Just because you don't like the government getting a free shot here. Factually, what is there about what they did? Your Honor, as we mentioned in our brief, there was a discovery motion, which was granted by the magistrate judge when he ordered... Let's stick with Franks hearing. It's a very technical subject. If you had a Franks hearing, you'd call the AUSA who filed this declaration? Or you want to cross-examine Hamilton about his affidavit? Where's the showing that the result of that would invalidate the warrant and would require excising of things that would then justify suppression? Your Honor, I want to first state that we believe, on the record, as it is established, we have met this threshold to show that a Franks hearing was warranted. But having said that, we also requested discovery, which was granted by the magistrate judge, relating to records and reports of this controlled buy, helping to establish this important question of whether Mr. Randall was or was not followed directly from this buy to the House. She didn't separately appeal that. I can understand counsel have all kinds of frustration in cases like this, but it has to be reversible error or it's water over the dam, so to speak. We believe that the search warrant should not be upheld by good faith and that a Franks hearing was necessary if that is not the court's decision. And so we would ask the court to remand to the district court. Thank you, counsel. The case has been thoroughly briefed and well-argued, and we will take it under advice.